UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

JOHN BAYDALE, *on behalf of himself*
*and all others similarly situated,*

              Plaintiff,

        -against-

AMERICAN EXPRESS COMPANY et al.,

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/14/2009

09 Civ. 3016 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

        Plaintiff brings claims under Sections 10(b) and Section 20(a) of the Securities

Exchange Act of 1934, 15 U.S.C. § 78a et seq., and Rule 10b-5 against American Express

Corporation ("AMEX"), and two of its officers and directors (collectively, "Defendants") on

behalf of himself and a purported class of all purchasers of AMEX stock between March 1, 2007

and November 12, 2008. The complaint alleges that Defendants made false and misleading

statements and omissions regarding AMEX's exposure to sub-prime borrowers. After

publication of notice of this action, three parties vie for appointment as lead plaintiff: (1) Local

No. 38 International Brotherhood of Electrical Workers Pension Fund ("IBEW"), represented by

Scott + Scott LLP ("Scott + Scott"); (2) Länsförsäkringar Fondförvalting AB ("LFAB"),

represented Motley Rice LLC ("Motley Rice"); and (3) Pipefitters Local Union No. 537 Trust

Funds ("Pipefitters"), represented by Labaton Sucharow LLP ("Labaton Sucharow"). For the

following reasons, IBEW is appointed lead plaintiff, and Scott + Scott is appointed lead counsel.

### BACKGROUND

IBEW purchased 21,460 shares and sold 3,530 shares during the class period, resulting in a net purchase of 17,930 shares and a Last-In-First-Out (LIFO)[1] loss of $619,743.[2] (Declaration of David R. Scott dated Apr. 21, 2009, Ex. C: Summary of Transactions and Losses of IBEW.)  Pipefitters purchased 29,675 shares and sold 34,615 shares during the class period, resulting in a net sale of shares of 4,940 and a LIFO loss of approximately $426,090. (Declaration of Alan I. Ellman dated Apr. 21, 2009, Ex. B: Summary of Transactions and Losses of the Pipefitters.)  LFAB purchased approximately 536,585 shares and sold approximately 127,826, for a net purchase of 408,759 during the class period, and had a LIFO loss of $14,260,828.  (Declaration of William H. Narwold dated Apr. 21, 2009, Ex. A: LFAB Certification.)

IBEW and Pipefitters are pension funds operated by labor unions.  LFAB is a Swedish money manager.  (Declaration of LFAB dated July 6, 2009 ("LFAB Decl.") ¶ 3.) LFAB seeks to represent several mutual funds it manages that purchased AMEX shares during the class period.  (LFAB Decl. ¶ 3.)  LFAB is owned by Länsförsäkringar Bank ("LB").  (LFAB Decl. ¶ 8.)  LB is in turn owned by Länsförsäkringar AB ("LAB").  (LFAB Decl. ¶ 9.)  LAB is a banking and insurance holding company owned by 24 regional Swedish insurance companies.

---

[1] This Court joins a number of other courts in this district in adopting LIFO as the proper accounting method for measuring losses.  See, e.g., Hunt v. Enzo Biochem, Inc., 530 F. Supp. 2d 580, 590 n.70 (S.D.N.Y. 2008); In re Doral Fin. Corp. Sec. Litig., 414 F. Supp. 2d 398, 403 n.7 (S.D.N.Y. 2006); In re eSpeed, Inc. Sec. Litig., 232 F.R.D. 95, 102 (S.D.N.Y. 2005).

[2] The other two movants question the share price IBEW used to calculate its losses on the shares it held at the close of the class period.  Because even after calculating the loss using the share price suggested by the other movants, IBEW has the second largest LIFO loss, this Court need not resolve which price should be used.

(Declaration of David R. Scott dated May 8, 2009, Ex. A: LAB 2008 Annual Report, at 1, 22.)

LAB itself also owns an insurance company. (LFAB Decl. ¶ 9.) As part of its banking business,

LB issues credit cards to consumers. (Declaration of David R. Scott dated May 8, 2009, Ex. C:

LAB 2008 Annual Report, at 12-13.)

## DISCUSSION

### I. Legal Standard

The Court must appoint as lead plaintiff the class member or members most

capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B)(i).

A plaintiff is presumed to be the most adequate if it: (1) either filed the complaint or made a

timely motion to be appointed lead plaintiff; (2) "has the largest financial interest in the relief

sought by the class"; and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

In determining which plaintiff has the greatest financial interest, courts consider

four factors: (1) the number of shares purchased during the class period; (2) the number of net

shares purchased during the class period; (3) the total net funds expended during the class period;

and (4) the approximate losses suffered. See, e.g., In re eSpeed, 232 F.R.D. at 98. The

magnitude of the loss is the most significant factor. See Kaplan v. Gelfond, 240 F.R.D. 88, 93

(S.D.N.Y. 2007). The plaintiff with the greatest financial interest in the litigation is entitled to a

presumption in favor of appointment as lead plaintiff so long as it otherwise satisfies the

requirements of Fed. R. Civ. P. 23. See Ellenburg v. J.A. Solar Holdings Co., No. 08 Civ. 10475

(JGK), 2009 WL 1033362, at *4 (S.D.N.Y. Apr. 17, 2009).

A potential lead plaintiff must also "make a preliminary showing that it satisfies the typicality and adequacy requirements of [Fed. R. Civ. P.] 23." In re eSpeed, 232 F.R.D. at 102. The typicality requirement is satisfied where a plaintiff has suffered the same injuries as other class members as a result of the same conduct by defendants and has claims based on the same legal issues. See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992). In considering the adequacy of a proposed lead plaintiff, a court must consider whether: (1) the lead plaintiff's claims conflict with those of the class; and (2) class counsel is qualified, experienced, and generally able to conduct the litigation. See In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 453 (S.D.N.Y. 2004). "[O]ther members of the purported class may try to rebut the statutory presumption by showing that the lead plaintiff will not fairly and adequately protect the interests of the class or is incapable of adequately representing the class because of 'unique defenses.'" In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., --- F.R.D. ----, No. 09 MDL 2058 (DC), 2009 WL 1875764, at *4 (S.D.N.Y. June 30, 2009) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)); see also In re Flag Telecom Holdings, Ltd. Sec. Litig., --- F.3d---, 2009 WL 2169197, at *9 (2d Cir. July 22, 2009) (noting adequacy is not met if the class representative is "subject to any 'unique defenses which threaten to become the focus of the litigation.'") (quoting Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000)).

## II. LFAB

LFAB has the greatest financial interest. In addition to suffering the largest loss, it purchased the most shares and expended more money than any other proposed plaintiff.

Like other class members, LFAB's injuries stem from the alleged overvaluation of AMEX stock resulting from Defendants' materially false and misleading statements and omissions. Although LFAB is otherwise adequate because it is a sophisticated company and has retained competent counsel, it is subject to unique defenses and suffers from other flaws that do not make it an adequate lead plaintiff.

In <u>In re SLM Corporation Securities Litigation</u>, No. 08 Civ. 1029 (WHP), this Court held that absent a showing that a plaintiff qualifies for an exception, a plaintiff must show either that <u>it</u> suffered an injury in fact or demonstrate an injury in fact through some other means such as an assignment of claims. <u>See</u> <u>In re SLM Corp. Sec. Litig.</u>, No. 08 Civ. 1029 (WHP) --- F.R.D. ----, 2009 WL 969934, at *1 (S.D.N.Y. Apr. 1, 2009) (citing <u>W.R. Huff Asset Mgmt. v. Deloitte & Touche LLP</u>, 549 F.3d 100, 107 (2d Cir. 2008)).

LFAB does not attempt to show that it has "legal title to, or a proprietary interest in, the claim," <u>Huff</u>, 549 F.3d at 108, but instead contends that it qualifies for "third-party standing." The Court of Appeals has characterized "third party standing" as one of the "few well-recognized prudential exceptions to the 'injury-in-fact' requirement," <u>Huff</u>, 549 F.3d at 109. "Third-party standing" requires that the Plaintiff demonstrate "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." <u>Huff</u>, 549 F.3d at 109.

This exception was recently applied in <u>In re Vivendi Universal, S.A. Sec. Litig.</u>, 605 F. Supp. 2d 570 (S.D.N.Y. 2009), to certain individual foreign money manager plaintiffs in the context of a summary judgment motion. <u>Vivendi</u>, 605 F. Supp. 2d 577-83. The court in <u>Vivendi</u> explained, "whereas the material issue under the <u>Huff</u> rule is alternatively whether the

plaintiff has suffered the claimed injury or been assigned the claim, the material issue under the Huff exception is whether the special relationship between plaintiff and the beneficial owner of the claim is such that the right to bring the claim inures to the plaintiff by operation of law." Vivendi, 605 F. Supp. 2d at 576.

Following oral argument, LFAB submitted the opinion of a purported expert on Swedish law that LFAB is not only permitted to bring suit on behalf of its funds but also has sole authority to sue for them. However, even if this Court credited that opinion, LFAB's status raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow. In contrast to Vivendi, where the parties were on the cusp of trial, that ancillary issue, now revealed, can be circumvented at this early stage by selecting another lead plaintiff.

Moreover, it is uncertain whether the Court of Appeals will adopt the relatively broad view of third-party standing articulated in Vivendi. Thus, if this Court were to appoint LFAB as lead plaintiff, "it is possible that these issues could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal." In re IMAX Sec. Litig., No. 06 Civ. 6128 (NRB), 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009); see also Koos v. First Nat'l Bank, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff . . . then the named plaintiff is not a proper class representative."). "This uncertainty requires this Court to proceed with caution." In re SLM, 2009 WL 939934, at *4; see also In re Bally Total Fitness Sec. Litig., No. 04-C-3530, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005)(finding presumption rebutted when unique defense would "distract [movant] from the claims of the rest

of the class"); In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 455-56 (S.D. Tex. 2002) (declining

to appoint lead plaintiff whose potential defenses and conflicts could endanger the interests of

the rest of the class).

LFAB attempts to assuage any fears relating to its standing to sue by informing

the Court that if LFAB is appointed lead plaintiff, LFAB's amended complaint will name an

undisclosed American institutional investor as co-lead plaintiff. However, this is not a motion

for class certification. The Court cannot consider some unknown class member at this stage.

See In re Worldcom, Inc. Sec. Litig., 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA lead

plaintiff provisions ensure that securities litigation is driven by investors, not lawyers: it is not a

process designed to select the most adequate complaint or a substitute for the class certification

process, which almost invariably comes later.").

There are several additional considerations that weigh against LFAB's

appointment. Foremost are potential conflicts arising from other activities carried out by

LFAB's parent companies. LFAB's ultimate parent company, LAB, owns additional companies

including a large insurance company and LFAB's parent, LB, which is one of Sweden's largest

banks. LFAB refuses to disclose whether LAB, LB, or any other entity owned by LAB had

investments in AMEX stock during the class period. While LFAB argues that transactions by

co-owned entities are irrelevant,[3] at the very least, those transactions may result in unique

defenses or conflicts relevant to the adequacy inquiry.

That LFAB's parent company's businesses involve issuing credit cards poses

_____

[3] LFAB also failed to disclose transactions by other funds managed by LFAB. These
transactions were only disclosed after the Court questioned LFAB at oral argument.

- 7 -

another potential conflict. One theory of Plaintiff's allegations is that AMEX misrepresented the exposure of its credit card business to sub-prime borrowers. Numerous courts have held that this type of conflict undermines Rule 23 adequacy. See, e.g., Langbecker v. Elec. Data Sys. Corp., 476 F.3d 299, 315 (5th Cir. 2007) (where legitimate theories of the case would have different consequences for class representative and class members, adequacy possibly not met); Valley Drug Co. v. Geneva Pharm., Inc., 350 F.3d 1181, 1189-92 (11th Cir. 2003) (finding class representatives inadequate where their economic interests and objectives conflicted substantially with those of absent class members); Pickett v. Iowa Beef Processors, 209 F.3d 1276, 1280 (11th Cir. 2000) (representation inadequate where class includes those "who claim harm from the very acts from which other class members benefitted").

III. IBEW

The movant with the second greatest financial interest in the litigation is IBEW. IBEW meets the typicality requirement because like other class members, IBEW's injuries stem from the alleged overvaluation of AMEX stock resulting from Defendants' materially false and misleading statements and omissions. In addition, there is no reason to believe that IBEW's claims conflict with those of the class. Finally, IBEW has retained highly competent and experienced counsel. The other movants point to nothing that leads this Court to question IBEW's adequacy. Accordingly, this Court names the Local No. 38 International Brotherhood Electrical Workers Pension Fund as lead plaintiff.

IV. <u>Lead Counsel</u>

As noted previously, IBEW retained Scott + Scott, highly competent and experienced counsel. Accordingly, the Court approves the selection of Scott + Scott as lead counsel.

CONCLUSION

For the foregoing reasons, Local No. 38 International Brotherhood of Electrical Workers Pension Fund is appointed lead plaintiff, and Scott + Scott is approved as lead counsel.

This Court will hold a conference on September 9, 2009, at 11:00 a.m.

Dated: August 14, 2009
     New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Curtis V. Trinko, Esq.
Law Offices of Curtis V. Trinko, LLP
16 West 46th Street, Seventh Floor
New York, NY 10036

Alfred G. Yates , Jr., Esq.
Gerald L. Rutledge, Esq.
429 Forbes Avenue
Pittsburgh, PA 15219
*Counsel for Plaintiff*

Mary Blasy, Esq.
Scott + Scott LLP
600 B Street, #1500
San Diego, CA 92101
*Counsel for Lead Plaintiff Local No. 38, IBEW Pension Fund*

James M. Hughes, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29464
*Counsel for Movant Lansforsakringar Fondforvalting AB*

Christopher J. Keller, Esq.
Labaton Sucharow, LLP
140 Broadway
New York, NY 10005
*Counsel for Movant Pipefitters Local Union #537 Trust Funds*